<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JASPER FRAZIER,<br><br>     Plaintiff,<br><br>    v.<br><br>VICTORIA L. KUHN, ESQ., *et al.*,<br><br>     Defendants. | Civil Action No. 21-16842 (BRM) (CLW)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

  Before the Court is *pro se* Plaintiff's Jasper Frazier's ("Plaintiff") Motion for a Temporary Restraining Order and Preliminary Injunction (ECF No. 149). Defendants[1] filed an opposition. (ECF No. 164.) Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument, for the reasons set forth below and for good cause appearing, Plaintiff's motion is **DENIED**.

**I.  BACKGROUND**[2]

  In September 2021, Plaintiff filed a Complaint (ECF No. 1) bringing claims pursuant to 42 U.S.C. § 1983 against multiple defendants, alleging mistreatment in connection with his confinement in the Indiana and New Jersey prison systems. In April 2022, the Court granted

---

[1] Due to the broad nature of some of Plaintiff's allegations and because several defendants have been dismissed or have not been served, the Court uses the term "defendants" generally unless otherwise noted.

[2] This case has a large docket with a complex history. The Court writes primarily for the parties and includes information as relevant.

Plaintiff's application to proceed *in forma pauperis*. (ECF No. 41.) In May 2022, Plaintiff filed an Amended Complaint (ECF No. 76), and in June 2022, the Court screened the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), allowing some claims to proceed while others were dismissed (ECF Nos. 59–60).[3]

On August 8, 2023, Plaintiff filed a motion for a temporary restraining order and preliminary injunction. (ECF No. 149.) Plaintiff argues several individuals, including some defendants as well as parties not named in the Complaint[4]: (1) denied him access to courts in Essex County and in New Jersey and Indiana[5]; (2) denied him access to electronic emails by permitting or directing inmates to use his JPay password, read his emails, then report the contents to defendants; (3) confiscated legal mail; (4) permitted inmates to call him names and to distribute "fake fabricated gay pictures"; and (5) tampered with Plaintiff's religious materials by using inmates as enforcers. (*Id.* at 2–4.) Plaintiff requests an order prohibiting this conduct and to have all confiscated materials returned. In support thereof, he submits a 33-page declaration citing instances when the referenced conduct took place (ECF No. 149-1), a 19-page memorandum of law (ECF No. 149-2), and 33 pages of exhibits, consisting of, *inter alia*, court filings from New Jersey and Indiana, grievances, disciplinary charges, and filing receipts (ECF No. 149-3).

---

[3] In May 2022 and December 2022, respectively, Plaintiff filed additional complaints, docketed at Case No. 22-2781 and 22-7755, bringing related claims against overlapping defendants. The Court granted Plaintiff's applications to proceed *in forma pauperis* and screened the complaints for dismissal under 28 U.S.C. § 1915(e)(2)(B), dismissing some claims and proceeding others. (*See, e.g.*, No. 22-2781, ECF No. 9.) The matters were later consolidated into this first-filed case.

[4] Plaintiff names a dozen or so individuals followed by "etc.," implying that his list is not exhaustive.

[5] Plaintiff filed and settled at least four cases in the United States District Court, Southern District of Indiana. (*See* ECF No. 149-3 at 6–9.)

On August 11, 2023, the Court ordered defendants to respond to Plaintiff's motion by August 17, 2023, and to include a status update regarding Plaintiff's state court cases[6] and settlement discussions. (ECF No. 151.) On August 15, 2023, the Court granted defendants' motion for a thirty-day extension. (ECF Nos. 152, 153.)

On August 24, 2023, Plaintiff filed supplemental briefing in support of his motion, primarily challenging the decisions in state court. (ECF No. 157.)

On August 28, 2023, defendants advised the Court that they had a telephone conference with Plaintiff, who indicated he "intends to terminate a part of his motion for injunctive relief regarding accommodations as to Plaintiff's religion" and that he "would like to continue settlement discussions." (ECF No. 158.) Defendants advised Plaintiff would partially withdraw his motion by September 1, 2023, and that he still "intend[ed] to pursue the aspect of his motion seeking temporary restraints regarding Defendants allegedly confiscating his legal mail, and distributing email passcodes and fabricated gay picture of Plaintiff to other inmates for purposes of harassing and bullying Plaintiff." (*Id.*)

The Court did not receive any letter from Plaintiff withdrawing part of his motion. On August 29, 2023, Plaintiff filed additional supplemental briefing in support of his motion. (ECF Nos. 159, 160.)

On September 15, 2023, defendants filed their opposition to Plaintiff's motion. (ECF No. 164.) What followed were many months of miscellaneous filings, appeals, extension requests, conferences, and services issues. (*See* ECF Nos. 165–205.) Defendants' answer is due April 1, 2024, following several extensions. (ECF No. 207.)

---

[6] Defendants advised the case in the Superior Court of New Jersey, Law Division, Essex County, Dkt. No. ESX-SC-337-23, was dismissed.

## II.   LEGAL STANDARD

Preliminary injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)). A primary purpose of preliminary injunctive relief is "maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 647 (3d Cir. 1994).

In order to obtain a temporary restraining order or preliminary injunction, the moving party must show:

> (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted . . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

*Reilly v. Cnty. of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (quoting *Del. River Auth. v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974)).

The movant bears the burden of establishing "the threshold for the first two 'most critical' factors . . . . If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* at 179. A court may issue an injunction to a plaintiff "only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." *AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1427 (3d Cir. 1994); *see also P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005) ("The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate."); *Ferring*, 765 F.3d at 210. A preliminary

4

injunction also should not be issued where material issues of fact are in dispute. *Reilly*, 858 F.3d at 179; *Vita-Pure, Inc. v. Bhatia*, Civ. A. No. 14-7831, 2015 WL 1496396, at *3 (D.N.J. Apr. 1, 2015) (denying injunction where factual disputes "preclude a determination that Plaintiffs have established a likelihood of success on the merits"); *Watchung Spring Water Co. v. Nestle Waters N. Am. Inc.*, Civ. A. No. 14-04984, 2014 WL 5392065, at *2 (D.N.J. Oct. 23, 2014), *aff'd*, 588 F. App'x 197 (3d Cir. 2014).

### III. DECISION

Plaintiff argues he is entitled to injunctive relief because "the continuing deprivations of constitutional rights constitutes irreparable harm." (ECF No. 149-2 at 9.) Specifically, he contends he suffered irreparable harm because defendants have been using gang members to monitor his emails, have retaliated against him by posting fake pictures of Plaintiff obtained by family members in Indiana and by placing him in cells with roaches, mice, and mentally ill inmates, created a hostile and unsafe environment by labeling him a snitch, and denied him access to courts and legal mail. (*Id.* at 4–5, 9–10.) He argues the balance of hardships weighs in his favor because defendants violated his rights, resulting in his suffering (*id.* at 11–12), and that he is likely to succeed on the merits because defendants intentionally interfered with his access to courts by confiscating legal mail (*id.* at 12–16 (citing incidents)). Finally, Plaintiff asks that he not be required to post a bond. (ECF No. 16–18.)

Defendants oppose, asserting that Plaintiff cannot establish he is likely to success on the merits of any claim. (ECF No. 164.) Defendants address each issue as follows.

As to Plaintiff's religious items, defendants contend they have accommodated Plaintiff's religious practices. (*Id.* at 1.) Plaintiff observes the Moorish Scientific Temple of America religion, which was recognized by the NJDOC upon Plaintiff's request following his transfer from Indiana

5

to New Jersey in 2021. (*Id.* at 3–4.) Plaintiff attempted to order religious items, including a fez, medallion, and Moorish flag, but did not order them through an approved source of sale a required by the NJDOC.[7] (*Id.* at 4.) As a matter of policy, the items were inspected were determined to be not authorized for retention.[8] (*Id.* at 4–5.) Plaintiff was permitted to keep the medallion but was provided with alternative options, such as items with soft plastic fasteners or with shorter chains. (*Id.* at 6.) Defendants assert Plaintiff cannot establish likelihood of success on the merits because the NJDOC's policies are reasonably related to legitimate penological interests (*id.* at 10 (citing cases)), the prison is not required to provide Plaintiff with access to every religious request (*id.* at 11 (citing cases)), and the NJDOC has provided Plaintiff with approved alternatives (*id.* at 13 (citing cases)).

As to Plaintiff's legal mail, defendants contend that Plaintiff's mail has not been confiscated, as evidenced by the prison's logbooks,[9] wherein Plaintiff acknowledged receipt of his mail. (*Id.* at 6; Mountcastle-Thomas Cert. (ECF No. 164-1), Ex. B.) Therefore, defendants argue, Plaintiff cannot establish likelihood of success on the merits on this claim.

As to Plaintiff's claim that defendants are conspiring with inmates to bully and harass him, defendants deny these allegations, stating "[t]he NJDOC has not distributed [Plaintiff]'s email passcode or gay fabricated pictures depicting [Plaintiff]" and that only Plaintiff has access to his

---

[7] The NJDOC places restrictions on inmates' property that is permitted into the secured perimeter of the facility. Approved items are reviewed and purchased from an approved source of sale. These sellers provide items that are less likely to be manipulated into weapons. (ECF No. 164 at 4.)

[8] The fez and flag each contain metal clips that could be sharpened and used as a weapon. The medallion contained a 29-inch chain that could be weaponized and exceeded the length of permitted chains. (ECF No. 164 at 5.)

[9] As a matter of policy, inmates are required to sign for legal mail in a logbook. (ECF No. 164 at 6.)

6

passcode, which is "provided to him in a secure envelope." (*Id* at 7.) Accordingly, defendants argue they establish a dispute of fact and, therefore, injunctive relief is not appropriate.

The Court addresses Plaintiff's claims in turn.

### A. Religious Items

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" U.S. Const. amend. I. However, incarcerated people enjoy diminished constitutional rights and only retain First Amendment rights to the extent they are "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987); *Sharp v. Johnson*, 669 F.3d 144, 155 (3d Cir. 2012) (stating that an inmate's rights are "necessarily limited" (citing *Waterman v. Farmer*, 183 F.3d 208, 213 (3d Cir. 1999))). When a prison regulation impinges upon an inmate's rights, the regulation remains valid and permissible so long as it is "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. Prison officials have "wide-ranging deference" in the "adoption and execution of policies . . . that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell*, 441 U.S. at 547–48; *Holman v. Hogue*, Civ. A. No. 11-1269, 2013 U.S. Dist. LEXIS 42770 at *4 (W.D. Pa. Feb. 15, 2013) ("While the federal courts must take cognizance of valid constitutional claims of prison inmates, the Supreme Court repeatedly has cautioned that the task of prison administration has been committed to the responsibility of the legislative and executive branches of government[,]" and "federal courts should be reluctant to second guess these authorities." (citing *Turner*, 482 U.S. at 84)). States may not impose unreasonable barriers to the free exercise of an inmate's religion but are not required to provide a place of worship for every

7

faith or accommodate every religious request. *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972); *Gittlemacker v. Prasse*, 428 F.2d 1, 4 (3d Cir. 1970); *Holman*, Civ. A. No. 11-1269, 2013 U.S. Dist. LEXIS 42770, at *4 ("It is not the responsibility of the prison to provide Plaintiff with access to every religious accommodation he requests.").

In determining whether a policy is reasonable, the Supreme Court in *Turner* outlined four considerations: (1) whether there is a logical connection between the prison regulation and the asserted penological interest; (2) whether alternative means of exercising the religious right in question remains open; (3) the impact the accommodation of the right in question would have on guards, other inmates, and on the allocation of prison resources; (4) whether any policy alternatives exist that would accommodate the right in question at *de minimis* cost to the prison. *Turner*, 482 U.S. at 89–91; *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 350 (1987).

The Court finds Plaintiff has not shown he is likely to succeed on the merits. A logical connection exists between the prison regulation—limitation of items permitted within the secured facility—and the asserted penological interest—security concerns regarding items that can be weaponized. Defendants did not summarily deny Plaintiff's requests despite his use of a non-approved seller; they reviewed each item and identified pieces that could pose a threat. (Szuba Cert. (ECF No. 164-2) ¶¶ 6–17.) Moreover, defendants provided Plaintiff with alternative means of exercising his religious rights. The only difference between the alternative items and the items Plaintiff requested are that the fasteners in the fez and the flag were plastic instead of metal, and the chain on the medallion had to be 24 inches instead of 29 inches. Were defendants to allow Plaintiff's items, the impact could be serious and dangerous (*see id.* ¶ 17 (noting the existence of prior incidents)), whereas the provision of alternatives has little impact on guards, other inmates,

and the allocation of resources, and has a *de minimis* cost to the prison. Accordingly, Plaintiff's motion to injunctive relief regarding his religious items is **DENIED**.

### B. Legal Mail and Access to Courts

New Jersey Administrative Code Title 10A, Chapter 18 (Mail, Visits and Telephone), Subchapter 3 (Legal Correspondence) governs the processing of legal mail at New Jersey State Prison. N.J. Admin. Code 10A:18-3.2 to -3.13. The New Jersey Administrative Code provides that "[i]ncoming legal correspondence shall be opened and inspected only in the presence of the inmate to whom it is addressed," and that "[i]ncoming legal correspondence shall not be read or copied." N.J. Admin. Code 10A:18-3.4(b). The Administrative Code does not provide for opening or inspection of legal mail outside of the relevant inmate's presence. (*Id.* ¶ 11.)

"[P]risoners, by virtue of their incarceration, 'do not forfeit their First Amendment right to use the mails,' and . . . a 'pattern or practice of opening properly marked incoming [legal] mail outside an inmate's presence infringes communication protected by the right to free speech.'" *Rogers v. McKishen*, No. 13-3771, 2018 U.S. Dist. LEXIS 108744, at *20–21 (D.N.J. June 29, 2018) (quoting *Jones v. Brown*, 461 F.3d 353, 358 (3d Cir. 2006) (quoting *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995)) (alteration in original). A plaintiff may state a First Amendment claim against a defendant who read his legal materials if he alleges there was a pattern or practice of opening and reading his legal materials outside of his presence. *See Schreane v. Holt*, 482 F. App'x 674, 676–77 (3d Cir. 2012) ("Prisoners may establish a violation of the First Amendment without establishing actual injury where there is a pattern and practice of opening properly marked incoming legal mail outside the prisoner's presence.") (citing *Jones*, 461 F.3d at 359).

In determining whether there was a pattern or practice of opening legal materials outside of an inmate's presence, the Third Circuit has held that "a single, isolated interference" with legal

9

mail is "insufficient to constitute a First Amendment violation." *Nixon v. Sec'y Pa. Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012). "Isolated incidents of opening legal mail outside of an inmate's presence, without any evidence of improper motive, is nothing more than an assertion of negligence, and is insufficient to establish a constitutional violation." *Hale v. Pa. Dep't of Corr.*, No. 07-0345, 2010 U.S. Dist. LEXIS 97101, at *3 (M.D. Pa. Sept. 16, 2010) (opening legal mail outside of prisoner's presence on two occasions not unlawful pattern or practice under First Amendment); *see also Martin v. Sec'y of Corr.*, No. 16-2060, 2021 U.S. Dist. LEXIS 40495, at *13 (M.D. Pa. Mar. 4, 2021) ("The unintentional opening of legal mail outside of Martin's presence on four occasions over an eight-month period does not demonstrate a pattern or practice of improper handling of his legal mail sufficient to find a First Amendment Violation."), *aff'd in part and vacated in part on other grounds*, *Martin v. Sec'y of Corr.*, No. 21-1522, 2022 U.S. App. LEXIS 13518 (3d Cir. May 19, 2022). *But see Rogers*, 2018 U.S. Dist. LEXIS 108744, at *26–27 (five instances over nine-month period may not be isolated incidents).

In opposition to Plaintiff's motion, defendants provide portions of the prison's logbook, showing that Plaintiff signed for and received his mail. (ECF No. 164-1, Ex. B.) Defendants do not specifically address whether the mail was opened outside of Plaintiff's presence, but state generally that they deny the allegations. While Plaintiff lists several instances where he did not receive mail, and the Court previously found Plaintiff sufficiently stated a claim (*see e.g.*, *Frazier v. Kuhn*, Civ. A. No. 22-2781(BRM)(CLW), 2022 WL 2235884, at *5 (D.N.J. June 22, 2022), the Court finds the logbook entries are sufficient to create a dispute of fact. Accordingly, injunctive relief is inappropriate at this stage, *Reilly*, 858 F.3d at 179; *Vita-Pure*, Civ. A. No. 14-7831, 2015 WL 1496396, at *3 (denying injunction where factual disputes "preclude a determination that

Plaintiffs have established a likelihood of success on the merits"), and Plaintiff's motion regarding his legal mail is **DENIED**.

### C. Misuse of Emails and Bullying or Harassment of Plaintiff[10]

Courts recognize that prison officials have an affirmative obligation to protect inmates from abuse at the hands of fellow prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citations omitted). However, as is the case generally with Eighth Amendment claims, proof of a culpable subjective intent is a critical component of an Eighth Amendment failure-to-protect claim. *Id.* at 834. In *Beers-Capitol*, the Third Circuit explained the basic requirements of a claim brought against a prison official under the Eighth Amendment: "An Eighth Amendment claim against a prison official must meet two requirements: (1) 'the deprivation alleged must be, objectively, sufficiently serious;' and (2) the 'prison official must have a sufficiently culpable state of mind.' *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001) (quoting *Farmer*, 511 U.S. at 834). Furthermore, in cases involving prison safety or prison conditions, the relevant state of mind "is one of 'deliberate indifference' to inmate health or safety." *Id.* This deliberate indifference standard "is a subjective standard under *Farmer*—the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." *Id.*

Defendants deny they accessed Plaintiff's email or distributed his password to inmates. In arguing same, defendants explain that Plaintiff is the only one with access to email, as he is the only one in possession of the password, which was given to him via a secure envelope. (ECF No. 164-1 ¶¶ 18–21.) They likewise deny that they conspired with the inmates to distribute fabricated pictures. (*Id.* ¶ 6; ECF No. 164-2 ¶ 19.) While the Court previously found Plaintiff sufficiently

---

[10] Consistent with this Court's prior opinions regarding Plaintiff, the Court construes this claim as one for cruel and unusual punishment under the Eighth Amendment. *See, e.g.*, *Frazier v. Kuhn*, Civ. A. No. 22-2781(BRM)(CLW), 2022 WL 2235884, at *5–6.

11

stated a claim for portions of his Eighth Amendment claim, *see, e.g.*, *Frazier*, Civ. A. No. 22-2781(BRM)(CLW), 2022 WL 2235884, at *6, the Court finds the certifications of defendants Sgt. Rhonda Mountcastle-Thomas, the mailroom sergeant at East Jersey State Prison, and Major Benjamin Szuba, the Security Major at East Jersey State Prison, sufficient to create a dispute of fact as to whether defendants acted with deliberate indifference towards Plaintiff. (ECF Nos. 164-1, 164-2.) Accordingly, injunctive relief is inappropriate at this stage, *Reilly*, 858 F.3d at 179; *Vita-Pure*, Civ. A. No. 14-7831, 2015 WL 1496396, at *3 (denying injunction where factual disputes "preclude a determination that Plaintiffs have established a likelihood of success on the merits"), and Plaintiff's motion regarding harassment and conspiracy is **DENIED**.

### D. Access to Courts

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996)). Two general categories of denial of access to the courts claims exist: (1) claims that systemic official action frustrates a plaintiff in preparing and filing suits at the present time, where the suits could be pursued once the impediment has been removed; and (2) claims of specific cases that cannot be tried (or tried with all material evidence), no matter what official action may be in the future. *Christopher v. Harbury*, 536 U.S. 403, 412–14 (2002). Regardless of the category, a plaintiff must identify a "nonfrivolous," "arguable" underlying claim and must address the underlying claim by allegations in the complaint sufficient to give fair notice to a defendant. *Id.* at 415–16. In other words, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Tinsley v. Giorla*, 369 F.

App'x 378, 381 (3d Cir. 2010) ("[A] prisoner making an access to courts claim is required to show that the denial of access caused actual injury.").

Plaintiff's claim that he was denied access to courts is based on allegations of interference with legal mail and email. Because injunctive relief was denied on those counts, Plaintiff's motion as to this claim is likewise **DENIED**.

## IV.   CONCLUSION

For the reason set forth above and for good cause appearing, Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction is **DENIED**. Plaintiff's case will proceed in due course. An appropriate order follows.

Date: March 20, 2024                    */s/ Brian R. Martinotti*
                                                         HON. BRIAN R. MARTINOTTI
                                                         UNITED STATES DISTRICT JUDGE